UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

COOKIEBAKER, LLC d/b/a TWINSTAR BAKERY,

        Plaintiff,

        v.

RAQUE FOOD SYSTEMS, LLC,

        Defendant.

**COMPLAINT**

Civil Action No.:

---

Plaintiff, Cookiebaker, LLC d/b/a TwinStar Bakery ("TwinStar"), by its attorneys, Phillips Lytle LLP, for its complaint against Defendant, alleges:

## THE PARTIES

1. Plaintiff is a domestic limited liability company organized under the laws of New York, with its principal place of business located at 13221 South Gessner Road, Missouri City, Texas.

2. Defendant Raque Food Systems, LLC ("Defendant" or "Raque") is a foreign limited liability company organized under the laws of Kentucky, with its principal place of business at 11002 Decimal Drive, Louisville, Kentucky.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this controversy based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

4. Plaintiff is a domestic limited liability company with its principal place of business in Texas.  Its members are Rich Products Corporation (a Delaware corporation with its principal place of business in Erie County, New York) and The Stolbun Group,

LLC. The Stolbun Group, LLC's members are a Texas limited partnership whose partners are citizens of Texas, a Texas corporation with its principal place of business in Texas, and individuals who are citizens of Texas, New York, and Connecticut. Therefore, for purposes of diversity jurisdiction, Plaintiff is a citizen of New York, Texas, Delaware, and Connecticut.

5. Defendant is a Kentucky limited liability company with its principal place of business in Kentucky. Upon information and belief and based upon an investigation of Kentucky corporate filings, its member is an individual who is a citizen of Kentucky. Therefore, for purposes of diversity jurisdiction, Defendant is a citizen of Kentucky.

6. The amount in controversy exceeds the sum specified by 28 U.S.C § 1332, exclusive of interest and costs.

7. Pursuant to the parties' written agreement, Raque consented to personal jurisdiction and venue in New York.

## BACKGROUND

8. On or about April 29, 2021, TwinStar and Raque entered into a Project Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

9. Pursuant to the Agreement, Raque agreed to design, engineer, manufacture, and sell to TwinStar a Dessert Cup Line (the "Equipment") that would automate the process of preparing frozen dessert products with cookie crumb bases and various toppings.

10. Per the Agreement's specifications, the Equipment was required to operate at a line speed of 240 cups per minute (for small containers) or 120 cups per minute (for large containers) to produce TwinStar's various cream desserts with cookie crumb bases. The dessert line was to have 8 lanes and be capable of automatically picking up and placing cups on a conveyor belt, into which equal layers of cookie crumb base would be deposited and tamped down, followed by deposits of semi-liquid desert and topping layers.

11. TwinStar purchased the Equipment to automate and speed up its production of various cream desserts for the purpose of reducing its overall production costs (including labor costs), thereby increasing profits. TwinStar's profit motive in purchasing the equipment was known to Raque at the time the parties entered into the Agreement, and Raque expressly acknowledged that if the Equipment was delayed or did not function properly, TwinStar would suffer financial losses.

12. The total not-to-exceed purchase price for the Equipment was $2,173,300, inclusive of all materials, labor, and supervision necessary to perform and complete the work by Raque.

13. The Agreement set a payment schedule requiring the contract sum to be paid in three installments.

14. TwinStar timely paid all amounts due and owing to Raque. To wit, TwinStar made an initial down payment of $1,074,300 on or about May 25, 2021. TwinStar made the second installment payment of $859,440 on or about October 28, 2021, even though Raque's completion of the Equipment was delayed and not all of its components were ready to ship. TwinStar has also paid Raque related invoices for

equipment installation and setup, freight charges, and the installation of chain guards. To date, TwinStar has paid Raque the total sum of $2,003,062.92.

15. The Agreement vested Raque with sole responsibility to design, engineer, and manufacture the Equipment to conform with the specifications and to work with TwinStar's product.

16. Raque held itself out as an expert in the field of food processing equipment design and manufacture. Raque advertises itself as an expert in creating "tailor-made" food-packaging machines. Raque claims that it does so by focusing on four stages: first, an "honest analysis" of "every part" of the client's specific application; second, engaging in a custom design process; followed by "meticulous manufacturing" to produce "the most robust and reliable systems" using construction standards that "typically exceed any organization's most stringent specifications"; and finally "guaranteed support" for the life of the machine.

17. TwinStar reasonably relied on Raque to design the Equipment to work with TwinStar's materials and ingredients and to facilitate TwinStar's processes to produce dessert cup products.

18. For purposes of designing and testing the Equipment, Raque (and its sub-contractor, Per-Fil Industries ("Per-Fil")) requested samples of TwinStar's cookie crumb base and the large and small cups used by TwinStar.

19. Prior to designing the Equipment, Raque did not ever visit TwinStar's facility to observe TwinStar's existing processes or its materials and ingredients.

20. Prior to designing the Equipment, Raque did not ever ask TwinStar for specifications of the various ingredients used in its dessert products, such as their moisture content, fat content, or component ingredients.

21. Raque, in its sole discretion, elected to design the Equipment based only on the sample cookie crumbs from TwinStar.

22. TwinStar provided Raque (and Per-Fil) with shipments of sample cookie crumbs upon request.

23. TwinStar produces its cookie crumb bases in-house using a standard set of recipes. At all relevant times, the cookie crumb recipes remained unchanged.

24. The sample cookie crumbs shipped to Raque and Per-Fil were produced using TwinStar's standard recipes during normal production runs of the cookie crumbs.

25. Thus, the sample cookie crumbs sent to Raque and Per-Fil were identical to those used in TwinStar's facility.

26. Raque requested a single shipment of cookie crumbs and cups. TwinStar shipped those samples to Raque on June 1, 2021.

27. Additional shipments of sample cookie crumbs were sent to Per-Fil in November 2021, January 2022, and twice in March 2022.

28. The Agreement called for the Equipment to be completed no later than October 31, 2021, and stated that time was of the essence.

29. Raque failed to complete the Equipment by the Agreement deadline.

30. As an accommodation, and without waiving any rights, TwinStar agreed to take delivery of the Equipment in stages, given Raque and Per-Fil's delays in manufacturing certain components.

31. TwinStar took delivery of some of the Equipment on or about November 20, 2021.

32. TwinStar did not receive the final components until April 8, 2022.

33. The Agreement provides that after completion of the installation of the Equipment, TwinStar can conduct acceptance testing for the purposes of determining if the Equipment works to TwinStar's satisfaction and operates in conformance with the specifications.

34. The Agreement provides that TwinStar may reject all or a portion of the Equipment if TwinStar determines that it fails to conform with the specifications and Raque's performance guarantee, in which event Raque is obligated to correct all deficiencies within a timeframe provided by TwinStar.

35. The Agreement further provides that if Raque is unable (or unwilling) to correct all deficiencies with the Equipment, then TwinStar may require Raque to take the Equipment back for a full refund.

36. Given the delay in delivery of all of the Equipment's components, TwinStar was unable to conduct complete acceptance testing of the Equipment after the initial delivery.

37. The portions of the Equipment that TwinStar was able to immediately test failed to operate as intended.

38. TwinStar promptly notified Raque of the Equipment's defects.

39. Among other things, the Equipment's cup denester, crumb depositor, crumb tamper, depositor, vibrating table, and extended conveyor were all defective and/or failed to operate properly as intended.

40. By way of example only, the cup denester routinely fails to pick up a single cup and dispense a single cup into its slot on the conveyor belt.

41. Likewise, the Equipment fails to deposit adequately equal quantities of cookie crumbs into each cup.

42. In sum, the Equipment fails to work adequately or at the speeds promised by Raque.

43. TwinStar promptly gave notice to Raque that the Equipment failed to operate as intended.

44. TwinStar communicated with Raque in good faith to develop solutions to remedy the Equipment's defects. However, on May 17, 2022, Raque wrote to TwinStar and claimed that the Equipment's inability to evenly distribute and tamp the cookie crumbs was due to differences in the sample crumbs sent to Raque for testing – despite the fact that the sample cookie crumbs sent to Raque and Per-Fil were identical to the cookie crumbs used every day at TwinStar's facility.

45. Rather than correct its own design failures as required by the Agreement, Raque demanded an additional $350,000 to design and build additional "spinning head" components that would allegedly better spread and pack TwinStar's cookie crumb.

46. Raque has provided no other proposed remedies or repairs for any of the Equipment's numerous other defects.

47. Though Raque's founder, Glen Raque, previously admitted to TwinStar that Raque owes TwinStar a system that works with its cookie crumb, Raque has failed and refused to remedy the Equipment's deficiencies at its expense.

48. Raque has failed and refused to repair, replace, or modify the Equipment to work as intended, to satisfy Raque's performance guarantee, and to conform with the specifications.

49. Raque has also wrongfully refused to refund the amounts TwinStar previously paid for the Equipment.

50. The Equipment in its current state is inoperable and takes up significant space on TwinStar's production floor.

51. Given Raque's refusal to repair the machine at its expense, on June 22, 2022, TwinStar demanded, pursuant to the Agreement, that Raque remove the Equipment from TwinStar's facility at Raque's sole cost and expense and refund all moneys paid for the Equipment. In the event Raque refused to remove the Equipment, TwinStar gave notice that it intended to remove the Equipment during the week of July 5, during a scheduled plant shutdown, and that it would charge the cost of such removal and storage to Raque.

52. Raque has failed and refused to remove the Equipment from TwinStar's facility. TwinStar will incur costs to remove and store the Equipment in an amount to be determined at trial.

53. Raque's failure to timely deliver the Equipment and its failure to remedy the Equipment's defects has caused TwinStar to suffer lost profits.

54. From February 1, 2022 through May 17, 2022, TwinStar incurred lost profits of not less than $358,000. TwinStar's lost profits have and will continue to accrue at a rate of approximately $25,000 per week.

**FIRST CAUSE OF ACTION**
(Breach of Contract)

55. Paragraphs 1 through 54 are realleged.

56. Under the terms of the Agreement, the Equipment was to be manufactured pursuant to the Specifications set forth in the Agreement, without defect of any kind, and to the complete satisfaction of Twin Star.

57. Raque agreed that, if the Equipment failed to operate as intended and to TwinStar's satisfaction, it would promptly repair, replace, or modify the Equipment at its sole cost and expense.

58. Alternatively, Raque agreed that if it was unable to remedy a breach, it would remove the Equipment from Twin Star's facility, at its sole cost and expense, and give Twin Star a full refund of all monies paid under the Agreement.

59. TwinStar gave notice of the Equipment's deficiencies and rejected the Equipment.

60. Raque has failed and refused to repair, replace, or modify the Equipment at its sole expense, and has otherwise failed to remove the Equipment and refund TwinStar the moneys previously paid.

61. Raque breached the terms of its contract with TwinStar by failing to properly design and manufacture the Equipment to meet the specifications or in accordance

with best practices. Further, the quality of its work was unacceptable to TwinStar such that Raque's services were careless, negligent, and unworkmanlike.

62. TwinStar has and will incur substantial costs and expenses in connection with the removal and storage of the Equipment and the costs and expenses to identify, source, and procure replacement equipment.

63. As a result of Defendant's breach of contract, TwinStar has been damaged and is entitled to (a) a refund of the $2,003,062.92 previously paid to Raque, (b) damages for all costs and expenses of removing and storing the Equipment in an amount to be determined at trial; (c) damages for lost profits in an amount to be determined at trial; (d) damages for the additional costs and expenses of obtaining replacement equipment; and (e) statutory pre- and post-judgment interest at a rate of 9% per annum.

## SECOND CAUSE OF ACTION
**(Breach of Warranty)**

64. Paragraphs 1 through 63 are realleged.

65. As part of its Agreement with TwinStar, Raque expressly warranted to TwinStar that all work done or services provided under the Agreement would be free from defects and would be in accordance with the best construction practices and be of a quality acceptable to TwinStar.

66. Defendant breached its warranty by carelessly and negligently performing its services required under the Agreement.

67. As a result of Defendant's breach of warranty, the Equipment was rendered useless and has caused TwinStar to incur lost profits and significant additional costs and expenses.

68. As a result of Defendant's breach of warranty, TwinStar has been damaged in an amount in excess of $2,003,062.92.

## **JURY DEMAND**

PLEASE TAKE NOTICE THAT Plaintiff hereby demands a trial by jury of all issues so triable.

WHEREFORE, Plaintiff hereby demands judgment against Defendant in an amount in excess of $2,003,062.92, plus pre- and post-judgment interest, costs, attorneys' fees and disbursements in this action, and such other and further relief as to the Court seems just and proper.

Dated: Buffalo, New York
July 1, 2022

PHILLIPS LYTLE LLP

By: /s/ Ryan A. Lema
Ryan A. Lema
Lauren E. Weber
Attorneys for Plaintiff
*Cookiebaker, LLC d/b/a TwinStar Bakery*
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400
rlema@phillipslytle.com
leweber@phillipslytle.com

Doc #10503528